## CONSUMERS' OIL & REFINING CO. v. BILBY et al.

No. 11594—Opinion Filed June 26, 1923.

Rehearing Denied July 24, 1923.

**1. Injunction — Judgment — Conditions — "Final Decree."**

A judgment which provides that the defendants, their servants, agents, employes and assigns are forever enjoined from interfering with or molesting plaintiff or its assigns in the possession, under a certain contract involving the use and possession of certain land described therein, but which requires plaintiff to comply with certain conditions imposed within ninety days, and provides that in the event of plaintiff's failure to so comply "the judgment shall be for defendants", is not a final decree.

**2. Judgment—Interlocutory Decree.**

Where further action of the court is necessary in a cause to give completely the relief contemplated by the court, the decree upon which the question arises is interlocutory and not final.

**3. Same—Final Judgment.**

Where the court renders judgment in the alternative as between plaintiff and defendants, making its finality as to one or the other contingent upon certain things to be done and performed by one of the parties, and after the time limit fixed by the court in such judgment defendants move the court to make such judgment final against plaintiff for failure to comply with the conditions imposed in such judgment, and upon a hearing of such motion the court finds the plaintiff in default as to the matters made interlocutory by such judgment, the action of the court in sustaining such motion converts such interlocutory judgment into a final judgment.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Wagoner County; Chas. G. Watts, Judge.

Action by Consumers' Oil & Refining Company against R. I. Bilby and N. V. Bilby to obtain a perpetual injunction. Judgment for defendants, and plaintiff brings error. Affirmed.

F. E. Riddle and Walker, Underwood & Rodolf, for plaintiff in error.

W. O. Rittenhouse and John C. Graves, for defendants in error.

Opinion by PINKHAM, C. The plaintiff in error was plaintiff in the trial court and the defendants in error were the defendants in the trial court, and will be referred to as plaintiff and defendants, respectively.

On the 9th day of December, 1918, plaintiff filed its petition in the district court of Wagoner county, Okla., wherein it sought a perpetual injunction enjoining the defendants from interfering with or disturbing plaintiff's possession of the land described in its petition, so far as such possession was necessary to prospect for and develop and operate oil and gas leases under a certain contract, attached to and made a part of plaintiff's petition.

In substance, it was alleged in the petition that the defendant J. S. Bilby, on the 17th day of March, 1917, was the owner of the land described in the contract set out, and that on said date he entered into a contract with one Matthews Nelson and A. L. Holtom, whereby the said Bilby conveyed to the said Nelson and Holtom all of the oil and gas rights within or under said lands described. That said Nelson and Holtom afterward conveyed said contract and all their rights to the premises to the plaintiff herein.

It was alleged that after the execution and delivery of said contract, and said assignment thereof, plaintiff went into possession of said premises and began the operations in accordance with the terms of said contract, and commenced the construction of a gasoline plant with the intention to manufacture gasoline from the gas produced from said premises and spent approximately the sum of $3,000 in building the foundation for said gasoline plant and building houses and erecting a dam for the catching of water; that plaintiff employed a competent man to remain in charge of said premises and operate the gas wells thereon.

That on the _____ day of _____, the defendant John S. Bilby conveyed by warranty deed said premises to the defendants. It was further charged that the defendants willfully and maliciously ordered the plaintiff and its servants and representatives off of said premises. That by reason of said threats plaintiff was prevented from further development of said premises for gas and the construction of a gasoline plant for the purpose of utilizing the gas. It was further alleged that plaintiff was ready, able, willing, and anxious to proceed with the development and carrying out of the terms of said contract but was prevented by the unlawful acts of the defendants as alleged; that by reason of such acts plaintiff was entitled. to a perpetual injunction against said defendants, for which it prayed the judgment of the court.

To this petition the defendants filed their answer and cross-petition wherein they denied generally all of the allegations in the petition. They further alleged that prior to March 1, 1917, the said defendant John S. Bilby was the owner of said lands and premises, that he was a man 86 years of age, and prior thereto had been active in business and trained in and schooled in transactions relating to land and livestock involving more than ordinary sums of money; that the said Nelson and Holtom were promoters and speculators in oil and gas leases; that on or about said date they entered into negotiations with the said John S. Bilby to obtain a contract on 840 acres located in sections 10, 16, and 22, for the purpose of exploiting the same for oil and gas; that after said parties had agreed upon a lease, the said Nelson and Holtom prepared the oil and gas lease attached to plaintiff's petition, and that they falsely and fraudulently represented to the said John S. Bilby that the lands described in said contract or lease, consisted only of 840 acres; that the said Bilby relied upon said statements, and not being aware of the true import of said lease, and on account of his failing eye-sight having neglected to read same, was induced to, and did, sign said contract and deliver the same to Nelson and Holtom; that said contract was fraudulent, in that it described more than 2,000 acres of land owned by the said John S. Bilby; that immediately thereafter the said Nelson and Holtom caused said oil and gas lease to be placed of record, with the intention to cheat and defraud the said John S. Bilby and for such purpose sold and assigned said lease and contract to the plaintiff; that on the___ day of _____ 19____, and after the execution of said oil and gas lease, defendant John S. Bilby, realizing his infirmity,

and for the purpose of protecting his property, conveyed the land in controversy to his cofendent; that immediately after the assignment of said oil and gas lease to the plaintiff, the plaintiff entered in upon that portion of the land contemplated in the original negotiations between the parties, and began a pretended exploitation of said real estate for oil and gas, and the said John S. Bilby, not then aware of the fraud practiced upon him, permitted plaintiff to explore said real estate and place certain minor improvements thereon, until about the 1st day of July, 1917, at which time the plaintiff had wholly abandoned the same; that thereafter the defendants R. I. Bilby and N. V. Bilby, having become aware of the fraud practiced as alleged, took over the complete possession of said real estate, and have ever since said date held the same adverse to the claim of plaintiff.

Defendants further alleged that by reason of all of the acts performed by plaintiff, and by reason of the failure of the plaintiff to proceed with due diligence, under the terms of the contract under which they claimed possession of said real estate, and by reason of their failure to do these things promised by them under their contract as claimed by them, they forfeited all rights, title, and interest in and to any and all parts of said real estate whatsoever, and all claims in law or equity, and that the title to said real estate should be quieted in the defendants; that by reason of the false, fraudulent and wrongful acts of the plaintiff as set out, they have lost the oil and gas premiums on said land, from the _____day of March, 1917, to the present time which said rental premiums were of the value of $30,000, and by reason of the plaintiff asserting a claim to said real estate and of filing this suit, defendants have been damaged in the sum of $30,000. They prayed for judgment canceling the contract and for assignment thereof, and for quieting title in the defendants, and for damages in the sum of $30,000.

Defendants filed an amendment to their cross-petition on February 27, 1919, in substance alleging that the plaintiff, in said oil and gas contract, agreed that lesses or their assigns should commence work of laying a pipe line and the erection of a gasoline plant, within 90 days from date of contract, providing the necessary machinery and material, etc., could be had; that in the event they failed to continue to operate said lease they would execute a release to same. It is then alleged that plaintiff ceased active operations under the contract and failed and re-

fused to build a pipe line and gasoline plant, and by reason thereof they had forfeited all rights thereunder.

The contract out of which this action arose was entered into between John S. Bilby and Eva Bilby, his wife, parties of the first part, and Matthew Nelson and A. L. Holtom, parties of the second part, on the 17th day of March, 1917, and is attached to the plaintiff's petition. By the terms of this contract it was agreed, first, that first parties sell to parties of the second part all the casing-head gas, or all the gas suitable for the manufacture of gasoline now being produced and that may hereafter be produced from any and all of the said described lands. Second, that second parties hereby agree to pay to the said first parties, for such and all gas produced and used from the said described premises at the rate of 1-8 of the gasoline produced therefrom. Third, that first parties hereby grant to said second parties the right of way over, across, and on the said described lands for the laying of such pipe lines and erecting such tanks as may be necessary in delivering the gas and conveying the same to the gasoline manufacturing plant.

Fourth, that first parties hereby grant to said second parties the right to go on and upon said described lands and explore and drill more wells for the production of gas and to drill at their own cost and expense paying to said first parties the same royalty provided for them for gas taken from the wells already drilled on said land by said first parties and in the event said second parties in drilling any such wells discover oil in paying quantities, they are hereby given the right to operate any such oil well or wells and pay to said first parties one-eighth of the oil so produced and to deliver the same into the pipe line to which they sell their oil to the credit of the said first parties, free of cost to them.

Further, that second parties agree to commence work of laying necessary pipe lines and the erection of the aforesaid gasoline manufacturing plant within 90 days from the date that this contract becomes in full force and effect, providing they can get the necessary pipe and all other machinery delivered within said 90 days, which may be delayed by strikes, floods, or other conditions beyond their control, and in that event they hereby agree to commence such work as soon as said pipes and machinery can be delivered, however they agree to order such pipe and machinery within said 90 days and use every effort to have the same delivered within the time specified.

It is further agreed that in case either party hereto is unable to comply with their part of this agreement on account of such causes or happenings as above mentioned, said parties shall not be held liable for any terms of this contract during such unavoidable delays, if such cause or causes are remedied within a reasonable time, and done with due diligence and dispatch.

On the 3rd day of February, 1919, after issue joined, all parties appeared before the district court of Wagoner county, and the trial of said cause on the merits proceeded. The case was submitted to the court and during the trial continued from time to time. On the 30th day of September, 1919, the court rendered the following judgment:

"It is therefore, by the court, considered, ordered, adjudged and decreed, that the defendants, John S. Bilby, N. V. Bilby and R. I. Bilby, and each of them, their servants, agents, employes and assigns, be, and they hereby are forever enjoined, restrained and debarred from in any manner whatsoever interfering with or molesting the plaintiff, Consumers Oil & Refining Company, its agents, servants, employes or assigns in the possession under said mentioned contract, of the following described property situated in Wagoner county, Okla., to wit: (Description of said land) and that they and each of them be further enjoined, restrained and debarred perpetually from interfering with or molesting said plaintiff, its agents, servants, employes or assigns, in the development, operation and maintenance of all of said described premises under the terms of said contract and from interfering with said plaintiff, its agents, servants, employes or assigns in doing anything it is entitled to do under said contract.

"It is further ordered, adjudged and decreed that said plaintiff, or its assigns, shall commence work of laying necessary pipe lines, and the erection of a gasoline manufacturing plant on the above described premises, within ninety days from the date of this judgment, provided they can get the necessary pipe and all necessary machinery delivered within said ninety days, which may be delayed by strikes, floods, or other conditions beyond their control, and in that event they are to commence work as soon as said pipe and machinery can be delivered, and said plaintiff is required to order such pipe and machinery within said ninety days and use every effort to have same delivered within the time specified, and the plaintiff may commence a well or wells, for the securing of more gas, within said ninety days from this date, and, in the event said work of laying necessary pipe lines, and the erection of said gasoline manufacturing plant is not commenced within said ninety days from the date of this judgment, and the

judgment shall be for the defendants quieting their title against said contract, and, if said work is commenced within said ninety days, said judgment to become a final judgment herein. To all of which the defendants, and each of them, duly excepted."

On the 6th day of January, 1920, the defendants filed a motion calling the court's attention to the terms of the decree entered by the court on the 30th day of September, 1919, which motion stated, in substance, that the plaintiff has not complied with the terms and conditions in said decree in this, to wit: That plaintiff has failed, refused and neglected to make any bona fide attempt whatsoever in carrying out the terms and conditions of said decree, having failed, refused and neglected to order and purchase and place upon the premises or adjacent thereto the materials necessary for the erection of the gasoline plant as contemplated in said decree, and pipe lines necessary for the conducting of said gas to the said gasoline manufacturing plant, and in fact have done nothing whatsoever in accordance with the terms of the decree of the court in this cause. Wherefore these defendants pray the court that that part of the decree awarding to the plaintiff the possession of the said real estate for the purposes of the contract on which this action is based, be set aside for failure of the plaintiff to comply therewith and that the court enter a final decree forever quieting the title to said real estate against the plaintiff, and all persons by, through or under it.

Plaintiff appeared by counsel and objected to the consideration of the same by the court for the reason that the court was without jurisdiction or authority and that there was no law authorizing such proceedings in that the judgment rendered at the former term of court was a final judgment. This objection was by the court overruled and the plaintiff saved an exception. The plaintiff filed a response to the motion in which it denied the material allegations contained therein.

The matter came on for hearing before the court on said motion and response, whereupon counsel for plaintiff, in substance, made the following statement:

"That plaintiff went upon the lands and made an examination of the gas wells on it: there were quite a number of wells drilled on this land, and during the interim between the time that we had been kept off this land and the signing of the final decree by this court, every single solitary gas well on that property had been destroyed by water, except one, on account of the fact that there has been no attention paid to them, the wells had not been blown off and that well was on the upper end of the property, some three or four miles from where he had commenced action. That thereafter, shortly thereafter, and during the month of October, these plaintiffs purchased and paid between $35,-000 and $40,000 for material to be used on this property for the purpose of erecting this plant and conveying gas from any point on this property to the plant; that in addition to that, they proceeded to drill close to where there had been a gas well, another gas well, and made and let a contract for three wells to be drilled; that they paid the parties that were to drill these and did drill them, a bonus of $500, in order to get in there as quickly as possible, and as quickly as they did, making in all a grand total that these plaintiffs have paid in the neighborhood of $40,000 on this property since the signing of the decree in this case and which amount was paid during the month of October, with the exception of some of the bills incurred in connection with drilling of these wells."

Thereupon counsel for the plaintiff moved the court for a judgment upon their motion, which motion was by the court overruled, and exceptions saved. Thereupon counsel for the plaintiff made this further statement:

"The evidence will further show in this case on behalf of plaintiff, that at the time of the signing of the decree in this case they thought that there was a large volume of gas and numerous wells then on the property, but after the signing of the decree they made an examination of the wells on said property, and found that only one of them had any gas at all; all the rest of the wells having been completely destroyed by salt water during the time that plaintiffs had been kept off of said property; that after purchasing of the casing and other materials to be used on said property, they caused said material to be moved and placed upon said property with the view of using the same in the drilling of gas wells and erection of a gas plant for gasoline purposes; that the $35,000 or $40,000 worth of material purchased was purchased for the express purpose of erecting said plant and drilling of more gas wells upon said property; that during said time, since the signing of said decree. the weather conditions had been such that it was impossible to move the material to said property, or to carry on the drilling of said well which had been started."

The defendants then moved the court for judgment on the statements of counsel for plaintiff and the judgment roll and statutory records in the case. The court then entered the following judgment on the said motion:

"Motion of defendants for judgment upon the statement of counsel for plaintiff and the judgment and statutory record in this

case, and the evidence on the judgment heretofore entered, sustained."

To which action and judgment of the court the plaintiff excepted. Motion for new trial was filed and overruled and exceptions saved, and the cause is now here for consideration on appeal.

A number of assignments of error are set out in plaintiff's brief, which counsel for plaintiff say may be conveniently presented and argued under the following subjects: First, the decree entered on the 30th day of September, 1919, was a final decree adjudicating the rights of the persons under the issues joined. Second, said decree being final the same could not be modified or vacated after the term, except for grounds specifically provided by statute, and in the manner therein provided. Third, conceding that the court had the authority and power to modify its former decree, it committed prejudicial error in granting the relief prayed for in the motion filed, upon the opening statement of counsel for plaintiff, and the record as made. Fourth, the court committed prejudicial error in overruling and denying the motion filed by plaintiff for a new trial.

The first assignment of error complained of is that the decree rendered and entered on the 30th day of September, 1919, is a final decree in the case.

It is contended by counsel for plaintiff in their brief that that part of the decree requiring the plaintiff to commence the work on the gasoline plant within 90 days, and that on its failure to do so, unless it was prevented from so doing on account of strikes or floods, or other conditions beyond their control, the judgment should be for the defendants quieting their title against the said contract, and if said work is commenced within 90 days from the date of the judgment rendered September 30, 1919, said judgment to become a final judgment, was beyond the power of the court to render and was void.

The logical inference to be drawn from the plaintiff's position is that only that part of the decree which grants the plaintiff a permanent injunction against any interference of the defendants with the possession of plaintiff was within the power of the court to render, and therefore it was not incumbent on the plaintiff to comply with the provisions of the decree requiring it to commence work on the gasoline manufacturing plant within 90 days from the date of the judgment; that the judgment rendered on September 30, 1919, in favor of the plaintiff

was a final judgment, and that part of the judgment favorable to the defendants was a nullity.

In Black on Judgments, vol. 1 (2d Ed.) sec. 41, the author in discussing the question of what is and what is not a final judgment, says:

"The difficulty appears to arise in relation to those decrees which, while settling the general equities of the cause, leave something for future action or determination. And the true rule seems to be that if that which remains to be done or decided will require the action or consideration of the court before the rights involved in the cause can be fully and finally disposed of, the decree is interlocutory; but it is none the less final if, after settling the equities, it leaves a necessity for some future action or direction of the court in execution of the decree as it stands."

In 28 Cyc. 1106, it is said:

"The party who claims the benefit of a judgment rendered in his favor must comply with any terms or conditions which it may impose upon him, and failure to do so will destroy the effect of the adjudication."

In the case of Cosden Oil & Gas Company v. Hendrickson et al., decided March 27, 1923, No. 13518, vol. 21, Oklahoma Appellate Court Reporter, 164 (pending on rehearing), our own court ordered a judgment entered by the trial court very similar to that entered by the trial judge in the case at bar:

"That shall the defendants, within 60 days, from the time of the entry of said decree, pay to the plaintiff the sum of $7,000, with six per cent. interest, as was received by them or any of them in the transaction extending the lease upon defendant Thomas Hedrickson's property, then in that case, and at such time that such payment is made, the defendants shall have judgment quieting the title in them as their interest may appear as against the plaintiff, the Cosden Oil & Gas Company, a corporation, and canceling said extension agreement. But in case said defendants fail to make such payment, within such time, upon application of plaintiff the court shall enter a decree declaring said contract binding and in full force and effect."

It appears from an examination of the record that during the trial in the original case, the court inquired of the witness Nelson, who was an official of the plaintiff company, as to the plaintiff's ability to start at once in carrying out the terms of the contract, and that this witness representing the plaintiff stated to the court that the plaintiff could get to drilling in a few weeks, and indicated by his answer to the court's question that the plaintiff was now in a position

to erect the gasoline manufacturing plant referred to in the contract, within a reasonable time.

The court then questioned one of the defendants as to his attitude, providing the plaintiff should agree to erect the gas plant within a reasonable time.

It appears that the defendant by his answer to the court's inquiry did not favor the suggestion of the court with respect to giving the plaintiff any further time to carry out the terms of the contract, and after the court had rendered the judgment enjoining the defendants from interfering with the plaintiff's possession of the leased premises, and further ordering that the plaintiff comply with the contract within 90 days, the defendants excepted to the judgment and filed a motion for new trial and took time to make and serve a case-made. The plaintiff, however, made no objection to the court's decree, and it must be held to have acquiesced in that part of the judgment requiring it to comply with all of the terms of the decree within 90 days, which provision of the decree is identical with the terms and conditions found in the contract. In other words the plaintiff, through one of its representatives, having stated to the trial court that it would proceed at once to commence work on the gasoline manufacturing plant which it had contracted to build within 90 days from the date of the contract (March 17, 1917) but which according to its contentions it had not been able to do for various reasons, and counsel for plaintiff having taken no exceptions to the judgment, the plaintiff in our opinion was bound in good faith to abide by the terms and conditions of the decree.

The judgment rendered and entered on the 30th day of September, 1919, did not adjudicate the ultimate rights of the parties or dispose of the case on its merits, and was therefore not a final judgment.

"A final decree which may be reviewed on appeal or writ of error is one settling all matters in litigation within the pleadings, so that an affirmance will end the suit, and leave nothing for the trial court." Maas v. Longstorf, 166 Fed. 41; Macfarland v. Brown, 187 U. S. 239, 47 L. Ed, 159 (quoting and adopting definition in Bostick v. Brinkerhoff, 106 U. S. 3, 27 L. Ed. 73).

In 23 Cyc. 572, it is said:

"Judgments may be either final or interlocutory. A final judgment is one which disposes of the case, either by dismissing it before a hearing is had upon its merits, or after trial, by rendering judgment either in favor of plaintiff or defendant. An inter-locutory judgment is one which determines some preliminary or subordinate point or plea, or settles some step, question, or default arising in the progress of the cause, but does not adjudicate the ultimate rights of the parties. No judgment is final which does not determine the rights of the parties."

In Jones v. Craig, 127 U. S. 213, 8 Sup. Ct. 1175, 32 L. Ed. 147, an order had been entered providing that if within 15 days the plaintiff in the action bring into court the amount of a note and mortgage, with interest thereon, together with taxes paid upon certain land, that, in that event the defendant be restrained from the further prosecution of an ejection action; but if the plaintiff should fail to bring the money into court within the time specified it was provided that the bill of complaint be dismissed. The court in passing upon the question as to whether the order amounted to a final judgment, used this language:

"This court, however, has no jurisdiction of the case as it stands, because the order just cited is not a final decree. Something yet remains to be done in order to make it such, and that action depends upon whether or not the complainants will comply with the order to bring in the sum due on the mortgage. If that order is not complied with then a decree should be made, upon the hypothesis upon which the order was made, in favor of the complainants in the bill, and quieting their title. If, however the money is not brought into court, then, according to the theory of the order, the bill of complaint should be dismissed. But, even assuming the right of the court to make the order, as well as its validity, the circumstances under which the bill of complaints is to be dismissed, or the relief granted to the complainants named therein, and the sum to be paid, are matters which are yet to be determined, which may turn out either one way or the other, and which, when ascertained, will be the foundation for a final decree."

In the case of State ex rel. Murphy v. Superior Court for King County (Wash.) 131 Pac. 1136, it is said:

"An order in a disbarment proceeding that the proceeding be dismissed upon the failure of a third person to bring action against the defendant therein named within 30 days was not a final judgment, but, after the expiration of the 30 days it was necessary to enter a subsequent judgment to effect a dismissal, and subsequent orders refusing to set the cause for trial, on the ground that it had been dismissed by the first order, were merely expressions of opinions as to the legal effect of the first order, not controlling upon the appellate court and not in themselves final judgments: a 'final judgment' being one which disposes of the

controversy, either by dismissing the cause before hearing is had upon its merits, or after trial, by rendering judgment in favor of one or the other of the parties to the action."

In the judgment rendered by the trial court in this case on the 30th day of September, 1919, the concluding words are as follows:

"And in the event said work of laying necessary pipe lines and the erection of said gasoline manufacturing plant is not commenced within ninety days from date of this judgment, and the judgment shall be for the defendants, quieting their title against said contract and, if said work is commenced within said 90 days said judgment to become a final judgment herein."

This language of the decree does not, it seems to us, lend any support to the statement of counsel for plaintiff in their brief that, "the judgment itself bears every evidence of a final judgment".

We conclude that the judgment rendered by the court on the 30th day of September, 1919, was not a final judgment, and that therefore the court had jurisdiction to hear the matter contained in the motion of defendants calling the atention of the court to the fact that the terms of the decree of September 30, 1919, had not been complied with by plaintiff, and that by reason thereof the defendants were entitled to the relief awarded them under the terms and conditions of the decree.

The next proposition discussed by counsel for plaintiff in their brief is: "Did the court at a subsequent term have the authority to modify or vacate the judgment?" It is contended by plaintiff that the defendants did not pretend to comply with any of the provisions of the statute specially authorizing the court subsequent to the term at which a judgment is rendered to vacate judgment; that the decree in question was rendered on the last day of the July term, 1919; and that the motion to modify or vacate same was not filed until January, 1920, term of the second term after the judgment was rendered.

In support of this contention counsel for plaintiff cite the case of Rawleigh Medical Company v. Eggers et al., reported in 74 Oklahoma, 178 Pac. 108, in which it was held that:

"An order made by the court at a subsequent term vacating a judgment rendered at a former term without complying with the conditions of the statute in regard thereto is void." And also the case of Hawkins v. Hawkins, 52 Okla. 786, 153 Pac. 844, to the same effect.

These cases, we think, are not applicable to the case at bar. The trial court did not validate, modify, or destroy the judgment rendered on the 30th day of September, 1919. The court by its action made the judgment final and effective as contemplated in the interlocutory decree which it rendered on the 30th day of September, 1919.

The third proposition submitted by counsel for plaintiff in his brief is: "Conceding that the court had authority to enter upon consideration of the motion, and conceding that the conditions of the decree complained of was valid, and assuming that the testimony on the part of the plaintiff would show that the state of facts indicated by counsel's opening statement, is it not clear that the court committed prejudicial error?"

Before rendering judgment on the motion of defendant the court had before it for consideration, not only the statement of counsel for plaintiff, but also the entire history of the controversy between the parties, as it was disclosed in the record of the case.

In other words, the motion of the defendants searched the entire record of the action.

It appears from an examination of the record that on the 17th day of March, 1917, the contract entered into between Nelson and Holtom, who were connected at the time with the plaintiff company, and John S. Bilby contemplated the erection on the land of Bilby, consisting of some 2,000 to 3,000 acres, a gasoline manufacturing plant, within 90 days of the date of the contract unless delivery of the materials therefor was delayed by conditions beyond the control of the plaintiff, and the contract provided that the plaintiff should lay the necessary pipe to convey the gas to the plant. The principal thing to be done under the contract by the plaintiff was to erect the gasoline plant and lay the pipe line to convey the gas from the wells, already on this land of the defendants at the time the contract was executed.

At the time this contract was entered into the record shows there were four producing gas wells on the defendant's premises, which according to the testimony of the plaintiff would produce gas sufficient to manufacture 622 gallons of gasoline per day.

The record discloses that during the summer of 1917, the plaintiff built a dam across a creek, built some cement piers and a tool house, and placed some implements and parts of machinery on the premises, all of the value according to plaintiff's testimony of $4,000. There was, at the time the plaintiff first took possession of the premises un-

der their contract, a small producing oil well, and while there appears to be no provision in the contract giving the plaintiff the right to use this well, it at once began pumping the well and disposing of the oil.

It appears that the defendants called the attention of the plaintiffs to the fact that it was not commencing any work on the gasoline plant which was the chief object of the contract.

There is testimony to the effect that in the spring of 1917, J. S. Bilby denied the plaintiff the use of the premises but the testimony clearly shows that plaintiff held possession of the premises, and kept a man employed to look after the wells from the time of the execution of the contract through the years 1917 and 1918. This representative of the plaintiff resided upon the premises and the testimony shows without conflict that the defendants made no attempt to interfere with plaintiff in carrying out the contract.

The testimony also shows that after midsummer of 1917, nothing was done by plaintiff on the premises, other than having a man on the land employed at a salary to blow off the gas wells which were on the land before the plaintiff acquired the lease.

When on the 26th day of January, 1920, counsel for plaintiff, in resisting the motion of defendants for judgment for the reason that the plaintiff had failed to comply with the terms of the decree rendered on September 30, 1919, stated to the court in substance and effect "that at the time of the decree they thought that there was a large volume of gas and numerous gas wells on the property, but after the signing of the decree they made an examination of the said wells and found that only one of them had any gas at all, that all of the rest of the gas wells had been completely destroyed by salt water during the time the plaintiff had been kept off the property, which fact they did not know until they made an examination of the wells". The court considering that statement of counsel for plaintiff in connection with the testimony in the original case could not close its eyes to the fact that the plaintiff had unmolested possession of the leased premises practically all the time from March 17, 1917, down to the 20th day of January, 1920; that according to plaintiff's testimony it had kept a representative upon the premises for the very purpose of taking care of the gas wells which it now claimed were valueless by reason of the acts of defendants.

The evidence disclosed in the record amply supports the irresistible conclusion that the plaintiff had no intention of any immediate compliance with the terms of either the contract or the decree of the court, and that its purpose was simply to hold this large acreage for speculative purposes. For more than two years it had held the premises of defendants under a contract, which by its terms required it to erect a gasoline manufacturing plant on the property, and lay the necessary pipe to carry the gas to the plant, within 90 days from the date thereof.

By the judgment of September 30, 1919, the court gave the plaintiff 90 days from that date to comply with the requirements of the contract. The 90 days expired with the leased premises in practically the same condition as it had been, and in response to defendants' motion for judgment, plaintiff challenged the jurisdiction of the court; its objection being overruled, plaintiff made a statement to the court giving its reasons for not complying with the judgment, which reasons convinced the trial court, as it convinces us, that the plaintiff intended to ignore the terms of the contract until such time as in its judgment it would be profitable for it to do the things it had agreed to do.

Upon an examination of the entire record, we are of the opinion that the judgment of the trial court sustaining the motion of defendants should be affirmed.

By the Court: It is so ordered.